# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# BOWLING GREEN DIVISION
# CIVIL ACTION NO. 1:15-CV-00088-TBR
# CRIMINAL ACTION NO. 1:13-CR-00039-TBR

KELLY DEWAYNE MORRIS                                      MOVANT/DEFENDANT

VS.

UNITED STATES OF AMERICA                                 RESPONDENT/PLAINTIFF

## SUPPLEMENTAL REPORT AND RECOMMENDATION

### BACKGROUND

This is a supplemental report and recommendation to Kelly Dwayne Morris' petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2255 (DN 36). The undersigned filed a report and recommendation (DN 58), recommending that Morris' petition be denied. The facts underlying Morris' conviction and appeal are set forth in the original report.

Morris subsequently filed a motion to reopen this matter (DN 60). The motion concerns videos showing Morris interacting with a confidential informant. Prior to this Court's initial issuance of a report and recommendation in this matter, the United States turned over to Morris video recordings showing transactions between Morris and a CI dated October 10 and October 16, 2016 (DN 63 at PageID # 406). Morris argued in his motion to reopen that the United States did not turn over all of the videos of Morris in its possession (DN 60 at PageID # 395-96). As a result, Morris could not fairly present an entrapment defense (Id.).

As it turns out, the United States did indeed possess additional videos showing transactions on August 1, August 12, and September 19, 2013 (DN 63 at PageID # 406). The United States turned these videos over to Morris, leading the District Court to issue an order granting Morris' motion to reopen to give the undersigned an opportunity to evaluate whether this new evidence bolstered Morris' claim that he had a viable entrapment defense (DN 63 at PageID # 410). Morris then filed a request that the Court pay for an expert to conduct a forensic analysis of the audio recordings (DN 67). In this motion, Morris submitted an affidavit stating he believed the new recordings - dated August 1, August 12, and September 19, 2013 - had been altered and did not accurately reflect the conversations he had with the CI (Id. at PageID # 421). Following a hearing on the issue, the undersigned granted in part and denied in part Morris' motion, ordering the Court to split the expert fee with Morris (DN 69).

The undersigned ordered an evidentiary hearing to be held on April 20, 2017 (DN 72) to obtain testimony about the newly produced recordings. A transcript of that hearing was filed at (DN 74), and this matter is ripe for recommendation.

## ANALYSIS

As noted above, the District Judge ordered this matter to proceed on the narrow issue of whether the additional videos contribute to Morris' claim of ineffective assistance of counsel as it pertains to trial counsel's failure to pursue an entrapment defense. Given subsequent testimony and evidence, the undersigned concludes that two questions must be answered to dispose of this issue. First, do the new recordings provide sufficient evidence to create a strong enough entrapment claim such that failure to pursue the defense would amount to ineffective assistance

of counsel? And second, do allegations of alterations in the recordings afford Morris any type of special deference? For the reasons set forth below, the undersigned concludes the answer to both questions is no.

## A. The Effect of New Evidence on Morris' Ineffective Assistance Of Counsel Claim

This issue is straightforward. At the evidentiary hearing, Morris admitted that none of the new recordings, as they are, offers any exculpatory evidence (DN 74 at PageID # 446). In discussing the recordings, Morris' counsel engaged in the following dialogue with the Court.

> THE COURT: All right. Mr. Goin, is there any other evidence or testimony that you want to present?
>
> MR. GOIN: No, sir, Judge. The recordings simply do not — the recordings that were given by Mr. Shannon to me simply do not back up what Mr. Morris says, and so they've got no exculpatory value from our standpoint.
>
> THE COURT: All right. I don't know that those are in evidence. Does anybody — it's up to you, but does anybody want to put those into evidence?
>
> MR. GOIN: I don't think it has any exculpatory value on our part, Judge, just to be honest with the court.
>
> THE COURT: All right.
>
> MR. GOIN: It's not going to show what we're arguing. It's only going to show that it's not there.

(Id.).

Morris was so certain that the recordings contained no exculpatory evidence that he has not even entered the new recordings into the record. The lack of evidence invites the conclusion that there is no reason to disturb the prior recommendation (DN 58).

3

B. Alleged Alterations of Recordings

Morris alleges that the three newly produced recordings were altered, and the original videos would have shown the CI constantly pressuring Morris about that CI's desire to purchase a firearm (DN 67 at PageID # 421). At the evidentiary hearing, Morris testified that he believed a number of conversations were omitted from the newly produced videos, including Morris telling the CI that "I don't play with guns" and "not to bring it up no more" (DN 74 at PageID # 440). Morris maintains he raised this issue with his trial counsel with respect to an entrapment defense (Id. at 440-41).

The Due Process Clause guarantees criminal defendants access to certain evidence. California v. Trombetta, 467 U.S. 479, 485 (1984). "[T]he suppression of material exculpatory evidence violates a defendant's due process rights, irrespective of the good faith or bad faith of the prosecution." United states v. Jobson, 102 F.3d 214, 218 (6th Cir. 1996) 9citing Brady v. Maryland, 373 U.S. 83, 87 (1963)). Brady defines "exculpatory evidence" as evidence that would have an impact on the innocence or guilt of the defendant. 373 U.S. at 87. Two separate tests have evolved to deal with two separate situations: the first where materially exculpatory evidence is inaccessible, and the second where only potentially exculpatory evidence is inaccessible. *Compare* Trombetta, 467 U.S. at 489 *with* Arizona v. Youngblood, 488 U.S. 51, 58 (1988). Where the evidence is materially exculpatory - meaning the evidence "both possess[es] an exculpatory value that was apparent before the evidence was destroyed, and [is] of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means" - destruction of the evidence results in a violation of due process, regardless of whether the government acted in bad faith. United States v. Wright, 260 F.3d 568, 570-71 (6th

Cir. 2001) (quoting Trombetta, 467 U.S. at 488-89. On the other hand, potentially exculpatory evidence will violate due process only where the defendant demonstrates bad faith on the part of the government actor. Id. at 571 (citations omitted).

Here, Morris has offered only a bald assertion that the videos were altered, and the only hint of an allegation that a government actor acted in bad faith is in this statement from Morris' counsel at the evidentiary hearing.

> And that was the basis upon which the conclusion was made that the tapes — the CDs — had to have been in some way altered or something deleted, something along those respects. I don't accuse Mr. Shannon. I mean, he's an officer of the court, and if he tells me this is what happened, then I have no reason to doubt his word. And I know that he would not be dishonest with the court. But the fact of the matter is there's something nefarious in the context that Mr. Morris has certain conversations with this confidential informant and those conversations are not reflected on these recordings.

(DN 74 at PageID # 434-35). Thus, the only government actor mentioned by name, AUSA Shannon, is not accused of acting in bad faith. Morris asserts generally that "something nefarious" happened, but without something more specific, the undersigned cannot determine if anyone acted in bad faith.

However, it hardly matters whether the alleged missing evidence is missing as a result of bad faith. This is because, even if the Court accepts Morris' account of the interactions with the CI as true, there is still no circumstance in which Morris could have satisfied the predisposition prong of an entrapment defense, meaning that the evidence would have no bearing on his guilt or innocence. *See* Brady, 373 U.S. at 87. As the undersigned explained in the prior report and recommendation:

> Attorney Bouldin discussed with Morris an entrapment defense to the gun possession charge and explained it was not viable because evidence regarding whether Morris was predisposed to possess a

> handgun could include his prior felony convictions involving possession and use of a handgun. Attorney Bouldin explained, for example, that Morris had a state felony conviction for facilitation to first degree robbery and murder which arose out of his use of a handgun and his shooting the victim multiple times which caused the victim to die. Attorney Bouldin indicated that conviction would make it harder to demonstrate that Morris, a convicted felon, was not predisposed to at least possessing a gun. Attorney Bouldin also pointed out that if Morris testified at trial that he never possesses, uses, and sells guns, then he would open the door to the prosecution presenting evidence regarding his possession and use of a gun in connection with the robbery and murder. Attorney Bouldin explained that such evidence would be devastating to an entrapment defense at trial. Additionally, Attorney Bouldin pointed out that Count 2 in the Indictment could have hurt Morris' entrapment defense because possession of a bullet proof vest would have suggested that he was predisposed to possess a gun.

(DN 58 at PageID # 365) (citations in original).

Thus, even if the undersigned assumes, only for the sake of argument, that the videos were altered, it doesn't change the facts outlined above. No reasonable juror could learn of Morris' history with firearms and conclude that he was not predisposed to possessing a firearm. Therefore, the undersigned concludes that the Court need not reach the issue of whether the videos were altered and if doing so represented a due process violation because Morris has failed to demonstrate that the alleged missing evidence would have any exculpatory value. It is recommended that this new claim be denied.

The only remaining issue is whether a Certificate of Appealability should issue as to these additional claims. When the Court rejects a claim on the merits, a petitioner must demonstrate that reasonable jurists would find the Court's assessment of the constitutional claim debatable or wrong. Slack v. McDaniel, 529 U.S. 473, 484 (2000). Here, no reasonable jurist would conclude that, in light of the predisposition prong of an entrapment defense, the alleged

missing evidence would be exculpatory.  Therefore, it is recommended that a Certificate of Appealability be denied as to all claims.

## **RECOMMENDATION**

For the forgoing reasons, the undersigned recommends that all new claims asserted in this matter be dismissed, and that no Certificate of Appealability issue as to any claim.

NOTICE

Therefore, under the provisions of 28 U.S.C. §§ 636(b)(1)(B) and (C) and Fed.R.Civ.P. 72(b), the Magistrate Judge files these findings and recommendations with the Court and a copy shall forthwith be electronically transmitted or mailed to all parties.  Within fourteen (14) days after being served with a copy, any party may serve and file written objections to such findings and recommendations as provided by the Court.  If a party has objections, such objections must be timely filed or further appeal is waived.  Thomas v. Arn, 728 F.2d 813 (6th Cir.), aff'd, 474 U.S. 140 (1984).

Copies:     Counsel
            Kelly Dewayne Morris