UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:15-CV-00088-TBR
CRIMINAL ACTION NO. 1:13-CR-00039-TBR

KELLY DEWAYNE MORRIS                            MOVANT/DEFENDANT

v.

UNITED STATES OF AMERICA                       RESPONDENT/PLAINTIFF

**Memorandum Opinion**

This matter is before the Court upon Movant/Defendant Kelly Dewayne Morris's *pro se* motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. [DN 36.] Magistrate Judge Brennenstuhl recommends that Morris's motion be denied. [DN 58; DN 76.] Morris has filed objections to portions of the Magistrate Judge's reports. [DN 59; DN 77.] The Court must review *de novo* those portions of the Magistrate Judge's recommended disposition to which Morris objects. 28 U.S.C. § 636(b)(1)(C). After careful consideration of Morris's objections and the record, the Court agrees with the Magistrate Judge that Morris's motion is without merit. Therefore, for the following reasons, Wadlington's § 2255 motion to vacate [DN 36] is DENIED. Furthermore, the Court DENIES a certificate of appealability as to all grounds raised in his motion.

**I. Facts and Procedural History**

On September 4, 2014, this Court entered a judgment of conviction against Morris in Case No. 1:13-CR-39 on one count of possession of a firearm by a convicted felon, 18 U.S.C. §§ 922(g)(1), 924(a)(2), one count of possession of body armor by a

convicted felon, 18 U.S.C. §§ 931(2), 924(a)(7), and four counts of possession with intent to distribute cocaine base, 21 U.S.C. §§ 841(a)(1), 841 (b)(1)(C). [DN 32.] These charges arose out of a series of transactions between Morris and a government confidential informant. Pursuant to a Rule 11(c)(1)(C) plea agreement, Morris pled guilty to the aforementioned six counts and was sentenced to a total of 151 months of imprisonment. *Id*. On July 8, 2015, Morris filed his motion to vacate under 28 U.S.C. § 2255, arguing ineffective assistance of counsel. [DN 36.] The Court referred Morris's motion to Magistrate Judge H. Brent Brennenstuhl for rulings on all non-dispositive motions, appropriate hearings, and findings of fact and recommendations on any dispositive matter. [DN 37.] After the United States' response, [DN 40], and Morris's reply, [DN 42], the Magistrate Judge held a hearing.

At that hearing, Morris advanced two grounds for the vacation of his sentence under § 2255. First, Morris argued his trial counsel, Assistant Federal Defender Patrick J. Boudin, failed to pursue an entrapment defense, which Morris believes the evidence supports. *See* [DN 58 at 18.] On this point, Morris testified and presented video recordings of meetings he had with the government's confidential informant on October 10 and 16, 2013. [DN 51, Def.'s Ex. 1]; [DN 53 at 3-34.] Second, Morris argued Boudin failed to file a notice of appeal, which Morris says he requested. [DN 58 at 24].]

Following the hearing, the Magistrate Judge issued findings of fact, conclusions of law, and a recommendation that Morris's motion be denied. [DN 58

at 28.] The Magistrate Judge explained that, in his view, "Attorney Bouldin made a sound strategic decision regarding the viability of an entrapment defense after consulting with Morris and considering the video recordings of the transactions between Morris and the CI." [*Id.* at 21.] Because the evidence did not support an entrapment defense, Bouldin's decision to negotiate a plea agreement and recommend it to Morris was objectively reasonable, preventing Morris from establishing ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 687 (1984). [*Id.* at 22-23.] The Magistrate Judge also concluded Morris "failed to demonstrate he gave Attorney Bouldin specific instructions to file a notice of appeal and that Attorney Bouldin disregarded those instructions," and therefore could not establish ineffective assistance of counsel under *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000), with respect to his second ground for vacation of his sentence. [*Id.* at 27.]

Morris filed objections to the Magistrate Judge's findings. *See* [DN 59.] He also filed a motion to reopen the hearing before the Magistrate Judge, seeking to introduce tapes of three additional conversations with the government's confidential informant that were not made available to him before the hearing. *See* [DN 60.] The Court granted Morris's motion, and the case went back to the Magistrate Judge for further consideration of Morris's entrapment defense. *See* [DN 63.]

Morris argued the additional recordings – dated August 1, August 12, and September 19, 2013 – had been altered, and sought funds to procure an expert to conduct a forensic analysis of the recordings. [DN 67.] The Magistrate Judge

granted Morris's motion in part, ordering Morris to pay half the expert fee. [DN 69.] The Magistrate Judge held a second evidentiary hearing on April 20, 2017, and issued a supplemental report and recommendation shortly thereafter.

In his supplemental report, the Magistrate Judge again concluded Morris was not entitled to relief based upon his attorney's failure to pursue an entrapment defense. He pointed out that at the second evidentiary hearing, Morris's counsel admitted the three additional recordings contained no exculpatory evidence. [DN 76 at 3.] Further, Morris "offered only a bald assertion that the videos were altered." [*Id.* at 5.] Lastly, even if the videos had reflected the conversations Morris alleged occurred, the Magistrate Judge said, "there is still no circumstance in which Morris could have satisfied the predisposition prong of an entrapment defense." [*Id.* at 5.] The Magistrate Judge once again recommended Morris's § 2255 motion be denied, and no certificate of appealability should issue. [*Id.* at 6-7.] Morris filed objections to the Magistrate Judge's supplemental report as well. [DN 77.]

## II. Standard of Review

A prisoner may request that his sentence be set aside on the grounds that it was "imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255(a). "The statute does not provide a remedy, however, for every error that may have been made in the proceedings leading to conviction," but only "when the error qualifies as a 'fundamental defect which inherently results in a complete

miscarriage of justice.'" *Slater v. United States*, 38 F. Supp. 2d 587, 589 (M.D. Tenn. 1999) (quoting *Reed v. Farley*, 512 U.S. 339 (1994)).

The "right to counsel" implies the "right to effective assistance of counsel." *Strickland v. Washington*, 466 U.S. 668, 692 (1984). Under *Strickland*, a "petitioner must make two showings to qualify for relief: (1) 'that counsel's performance was deficient'; and (2) 'that the deficient performance prejudiced the defense.'" *Howard v. United States*, 743 F.3d 459, 464 (6th Cir. 2014) (quoting *Strickland*, 466 U.S. at 687). "An attorney's performance is deficient if 'counsel's representation fell below an objective standard of reasonableness.'" *Huff v. United States*, 734 F.3d 600, 606 (6th Cir. 2013) (quoting *Strickland*, 466 U.S. at 688). "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 694.

### III. Discussion

In his § 2255 motion, Morris alleges his attorney, Patrick Bouldin, was ineffective in two ways. Morris says Bouldin failed to file the appeal he requested and failed to pursue a viable entrapment defense. *See* [DN 36.] After two evidentiary hearings, the Magistrate Judge found that neither theory entitles Morris to relief. As more fully explained below, the Magistrate Judge did not err in reaching that conclusion.

5

A. Failure to Appeal

First, Morris alleges Bouldin failed to pursue a direct appeal of his conviction, contrary to Morris's express wishes. [DN 36 at 5.] In *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000), the Supreme Court noted that "a lawyer who disregards specific instructions . . . to file a notice of appeal acts in a manner that is professionally unreasonable." If an attorney fails to file a requested appeal, prejudice is presumed, and the "defendant is entitled to resentencing and to an appeal without showing that his appeal would likely have had merit." *Peguero v. United States*, 526 U.S. 23, 28 (1999) (citing *Rodriquez v. United States*, 395 U.S. 327, 329-30 (1969)); *see also Ludwig v. United States*, 162 F.3d 456, 459 (6th Cir. 1998). The question, then, is whether Morris "has made the requisite showing . . . on the facts of [his] particular case" that he requested an appeal, and that Bouldin disregarded that request. *Flores-Ortega*, 528 U.S. at 485.

On this point, the Magistrate Judge received testimony from both Morris and Bouldin. Morris testified that immediately after his sentencing, while still seated at counsel table, he told Bouldin he wished to file an appeal. [DN 53 at 4, 25-27.] According to Morris, this was the only time the two discussed an appeal. [*Id.* at 27.] In contrast, Bouldin testified that he did not recall Morris instructing him to appeal. [*Id.* at 51.] Rather, he believed Attorney Laura Wyrosdick, who stood in for Bouldin during Morris's change of plea hearing, would have advised Morris he was waiving his right to appeal under the plea agreement. [*Id.* at 48-50.]

6

Based upon this testimony, the Magistrate Judge concluded that Morris "failed to demonstrate he gave Attorney Bouldin specific instructions to file a notice of appeal and that Attorney Bouldin disregarded those instructions." [DN 58 at 27.] In so holding, the Magistrate Judge found Bouldin's testimony to be more credible than Morris's, and accordingly assigned it greater weight. [*Id.*] Morris objects to the Magistrate Judge's credibility determination, arguing that "[i]t seems very credible that the movant in fact requested his attorney to file an appeal." [DN 59 at 7.]

As stated above, pursuant to 28 U.S.C. § 636(b)(1)(C), the Court must review *de novo* the portions of the Magistrate Judge's report and recommendation to which Morris objects. However, "[w]hen a magistrate's findings and recommendations rest upon the evaluation of the credibility of a witness, the district court is not required to rehear the testimony in order to conduct a *de novo* determination of the issues." *United States v. Bermudez*, No. 99-6097, 2000 WL 1871676, at *3 (6th Cir. Dec. 11, 2000) (citing *United States v. Raddatz*, 447 U.S. 667, 675-76 (1980)). Stated otherwise, "[c]redibility determinations of the magistrate judge who personally listened to the testimony . . . should be accepted unless in its *de novo* review of the record the district court finds a reason to question the magistrate judge's assessment." *United States v. Chaplin*, No. 1:16-CR-00001-GNS, 2017 WL 1365226, at *2 (W.D. Ky. Apr. 7, 2017) (quoting *United States v. Johnson*, No. 10-20176, 2011 WL 3844194, at *2 (W.D. Tenn. Aug. 30, 2011)) (cleaned up).

7

Here, the Court sees no such reason. As the Magistrate Judge correctly noted, Morris's testimony was inconsistent regarding the timing of his request for an appeal. He first testified he made his request following his sentencing hearing. [DN 53 at 4, 25-27.] Then, upon questioning by the Magistrate Judge, Morris said he asked Bouldin to file an appeal following his change of plea hearing. [*Id.* at 15-16.] This second version of events could not have occurred, however, because Laura Wyrosdick stood in for Bouldin during Morris's plea change. Finally, although Morris testified Bouldin told him there were grounds for an appeal, he could not recall what those grounds were. [*Id.* at 25-26.] In contrast, Bouldin's testimony contained no such inconsistencies. He stated he did not recall Bouldin asking for an appeal, nor would he have advised Morris that there were grounds for one, given that Morris waived his right to appeal as part of his guilty plea. [*Id.* at 51-53.] The Magistrate Judge did not err in crediting Bouldin's testimony over Morris's. Because Morris failed to make a showing he actually requested an appeal, he is not entitled to relief, and his objections in this regard are overruled.

## B. Entrapment

Next, Morris asserts Bouldin provided him ineffective representation by failing to pursue an entrapment defense. [DN 26 at 16-18.] Because the evidence supported the notion he was entrapped into possessing a firearm, Morris says, Bouldin should not have advised Morris to accept the government's plea offer.

One way a defendant may succeed on an ineffective assistance of counsel claim is by proving his attorney wrongly advised him to enter a guilty plea. *Hill v.*

8

*Lockhart*, 474 U.S. 52, 58 (1985). In *Hill*, the Supreme Court held that the two-part test announced in *Strickland* applies to such claims. To prevail under this theory, the defendant must first show his attorney's performance "fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 688 (1984). Second, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. The *Hill* Court went on to clarify how a defendant like Morris can demonstrate prejudice:

> [W]here the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error 'prejudiced' the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial. Similarly, where the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the 'prejudice' inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial.

*Id.*

In his initial report and recommendation, the Magistrate Judge concluded Morris failed to satisfy either part of *Strickland*. First, he determined Bouldin "made a sound strategic decision regarding the viability of an entrapment defense" based upon the video evidence available to him at the time, Morris's criminal history, and the Sixth Circuit's entrapment jurisprudence. [DN 58 at 21-22.] Bouldin also "negotiated the best sentence possible for Morris in a Rule 11(c)(1)(C) plea agreement." [*Id.* at 22.] According to the Magistrate Judge, Bouldin's

actions amounted to "objectively reasonable representation." [*Id.* at 23.] Second, the Magistrate Judge noted Morris failed to establish prejudice, writing that "in light of the evidence against him at the time of his plea," Morris did not demonstrate going to trial would have been a rational decision upon which he would have insisted. [*Id.*]

The Magistrate Judge's recommendation did not change after viewing the additional video recordings. As noted earlier, following the first round of proceedings before the Magistrate Judge, the government turned over video recordings of three additional transactions between Morris and its confidential informant. [DN 76 at 2.] The Magistrate Judge held a second hearing, during which Morris's counsel admitted the new recordings contained no exculpatory evidence tending to prove Morris had a viable entrapment defense. [*Id.* at 3.] Based upon that admission, the Magistrate Judge did not see fit to disturb his earlier conclusions that Bouldin did not provide ineffective representation and that Morris suffered no prejudice. *See* [*id.*]

Instead, the majority of the supplemental hearing was devoted to the effect, if any, of Morris's allegations of evidence tampering. Morris claimed the three additional recordings had been altered because they did not accurately reflect his recollection of his encounters with the CI. [*Id.* at 4.] The Court afforded Morris an opportunity to have the recordings forensically analyzed; apparently, however, such an analysis could not be performed because the original recording devices were no longer available. [DN 77 at 1-2.] While the Magistrate Judge recognized this

10

could raise issues related to spoliation, he ultimately concluded that "even if the Court accepts Morris' account of the interactions with the CI as true, there is still no circumstance in which Morris could have satisfied the predisposition prong of an entrapment defense." [DN 76 at 5.] According to the Magistrate Judge, "[n]o reasonable juror could learn of Morris' history with firearms and conclude that he was not predisposed to possessing a firearm." [*Id.* at 6.]

Morris objects to the Magistrate Judge's recommended disposition of his § 2255 motion as it relates to his entrapment defense. He says "there was absolutely no evidence that [Morris] engaged in firearms for profit." [DN 59 at 8.] Further, "Morris' criminal record, although potentially damaging to his character, would show that he did not have a history of dealing in or using firearms." [*Id.*] Finally, Morris says Bouldin failed to adequately investigate the discrepancies between the video recordings of Morris's interactions with the CI and Morris's own account of those meetings. [DN 77 at 3.]

The Magistrate Judge correctly concluded Bouldin's decision to negotiate a plea rather than recommend Morris go to trial with an entrapment defense did not amount to ineffective assistance of counsel. First, Morris has not shown Bouldin acted unreasonably. Bouldin correctly recognized that entrapment is a high bar to clear. Entrapment consists of two elements: "government inducement of the crime, and a lack of predisposition on the part of the defendant to engage in the criminal conduct." *Mathews v. United States*, 485 U.S. 58, 63 (1988). Predisposition, or lack thereof, is determined using several factors:

> the character or reputation of the defendant, including any prior criminal record; whether the suggestion of the criminal activity was initially made by the Government; whether the defendant was engaged in the criminal activity for profit; whether the defendant evidenced reluctance to commit the offense, overcome only by repeated Government inducement or persuasion; and the nature of the inducement or persuasion supplied by the Government.

*United States v. McLernon*, 746 F.2d 1098, 1112 (6th Cir. 1984) (citations omitted).

Prior to his federal gun charge, Morris had already accumulated several felony convictions in state court: possession of a controlled substance first-degree (cocaine); first-degree trafficking in a controlled substance (cocaine); promoting contraband first-degree; facilitation of robbery first-degree; and facilitation to murder. [DN 12 at 1-2.] Morris's prior convictions comport with his testimony that he regularly dealt crack cocaine. [DN 53 at 5-6.] Moreover, although Morris repeatedly insisted he had no involvement with firearms, his presentence investigation report indicated several of his prior state convictions involved the possession and use of firearms. *See* [DN 29 at 13-20.] Morris did not object to those portions of the report. [DN 56 at 2.] Those convictions and their underlying facts would have been admissible at trial. *See McLernon*, 746 F.2d at 1110-12. It would have been difficult, if not impossible, for Bouldin to convince a jury Morris was not predisposed to possessing a firearm, even if the videos reflected Morris's recollection of his conversations with the CI.

Instead of pursuing a weak entrapment defense, Bouldin negotiated a plea offer of 151 months. He knew Morris was a career offender under the sentencing guidelines, and was concerned Morris might face a 180-month mandatory minimum

12

sentence under the Armed Career Criminal Act. Bouldin also recognized that if Morris went to trial on the felon-in-possession charge and lost, his sentence on that count could run consecutive to his sentence on the drug charges. Morris would also lose the three-level reduction for acceptance responsibility, and might gain a two-level enhancement for obstruction of justice. In light of these facts, Bouldin negotiated the best deal he could, and advised his client to take it. The Magistrate Judge concluded Bouldin's decision to recommend Morris take the plea was reasonable under *Strickland*, and Morris has presented this Court with no reason to doubt that conclusion.

The Magistrate Judge also correctly determined Morris has not demonstrated prejudice under the second prong of *Strickland*. On this point, Morris's only argument is that Bouldin should have conducted a more thorough investigation of the videotaped interactions between Morris and the CI. But as explained above, given Morris's criminal history and past involvement with firearms, the evidence Morris claims existed would not likely have changed the outcome of a trial or Bouldin's recommendation as to the plea. *Hill*, 474 U.S. at 59. As the Magistrate Judge aptly wrote, "Morris has not demonstrated that . . . insisting on going to trial would have been a rational decision." [DN 58 at 23.] This Court sees no reason to upset the Magistrate Judge's findings in this regard either.

C. Certificate of Appealability

The final issue is whether a certificate of appealability should issue in this case. A state or federal prisoner who seeks to take an appeal from the dismissal of

13

a habeas corpus petition or a motion to vacate must satisfy the certificate of appealability requirements of 28 U.S.C. § 2253(c). A certificate will be issued only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). Such a substantial showing is made when a prisoner establishes that jurists of reason would find it debatable whether the petition or motion states a valid claim of the denial of a constitutional right or, in the cases in which the petition is resolved based upon a procedural ruling, that jurists could find it debatable whether the district court was correct in its procedural ruling. *See Porterfield v. Bell*, 258 F.3d 484, 485-86 (6th Cir. 2001). A state prisoner may raise on appeal only those specific issues for which the district court grants a certificate of appealability. *Powell v. Collins*, 332 F.3d 376, 398 (6th Cir. 2003). Morris has not shown the denial of a constitutional right on any of his claims. Because reasonable jurists could not debate any of these points, the Court will deny Morris a certificate of appealability as to all grounds raised in his petition.

## IV. Conclusion

The above matter having been referred to Magistrate Judge Brennenstuhl, who has filed his Findings of Fact and Conclusions of Law, objections having been filed thereto, and the Court having considered the same, IT IS HEREBY ORDERED:

(1) The Court ADOPTS the Findings of Fact and Conclusions of Law as set forth in the reports submitted by the Magistrate Judge [DN 58; DN 76], and OVERRULES Defendant's objections [DN 59; DN 77];

(2) Defendant's motion to vacate pursuant to 28 U.S.C. § 2255 [DN 36] is DENIED; and

(3) A Certificate of Appealability is DENIED as to each claim asserted in the petition.

A separate judgment shall issue.

CC: Counsel of Record